In the Matter of BERNARD J. BROUS, Appellant, against ARTHUR B. SMITH, as Building and Zoning Inspector of the Town of Islip, Respondent.

Argued April 15, 1952; decided May 29, 1952.

*Herman M. Trabich* for appellant. I. Section 280-a of the Town Law is in violation of section 6 of article I of the State Constitution and section 1 of the Fourteenth Amendment of the United States Constitution. Section 280-a deprives petitioner of his property without due process of law. (*Ives* v. *South Buffalo Ry. Co.,* 201 N. Y. 271; *Arverne Bay Constr. Co.* v. *Thatcher,* 278 N. Y. 222; *People ex rel. Gow* v. *Bingham,* 57 Misc. 66; *Whipple* v. *City of South Milwaukee,* 218 Wis. 395.) II. Section 280-a is a denial of the equal protection clause of section 1 of the Fourteenth Amendment of the United States Constitution in that it is a systematic and purposeful discrimination against petitioner and those in his class. (*Watkins* v. *Oaklawn Jockey Club,* 86 F. Supp. 1006; *Washington Nat. Ins. Co.* v. *Board of Review,* 1 N. J. 545; *People* v. *Beakes Dairy Co.,* 222 N. Y. 416; *Frost* v. *Corporation Commission,* 278 U. S. 515; *Gulf, Colorado & Santa Fé R'y. Co.* v. *Ellis,* 165 U. S. 150; *Jones* v. *Union Guano Co.,* 264 U. S. 171; *Gilman* v. *Tucker,* 128 N. Y. 190.) III. Section 280-a is a violation of section 7 of article I of the State Constitution. (*Taylor* v. *Porter,* 4 Hill 140.) IV. Section 280-a is an arbitrary, unreasonable, oppressive and capricious act and not a proper exercise of police powers of the State of New York. (*People ex rel. Pinello* v. *Leadbitter,* 85 N. Y. S. 2d 287.)

*John P. Cohalan, Jr.,* for respondent. I. The enactment of section 280-a of the Town Law was a proper exercise of the legislative function, and the statute is constitutional. (*Euclid* v. *Ambler Co.,* 272 U. S. 365; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288; *Town of Islip* v. *Summers Coal & Oil Co.,* 257 N. Y. 167; *Matter of Fimiani* v. *Board of Appeals of City of Buffalo,* 233 App. Div. 552, 258 N. Y. 613; *Matter of Stevens* v. *Clarke,* 216 App. Div. 351; *Allen* v. *Stockwell,* 210 Mich. 488; *Ayres* v. *City Council of Los Angeles,* 34 Cal. 2d 29; *People ex rel. St. Albans–Springfield Corp.* v. *Connell,* 257 N. Y. 73.) II. There is no discrimination against petitioner or of those in his class. (*Frost* v. *Corporation Commission,* 278 U. S. 515.) III. No private property of petitioner is being taken, with or without compensation. (*Taylor* v. *Porter,* 4 Hill 140.) IV. Section 280-a is a measure designed to safeguard the public health, safety and general welfare. (*People* v. *Ewer,* 141 N. Y. 129; *People* v. *King,* 110 N. Y. 418.)

F<small>ULD</small>, J.   Petitioner, a real estate developer and builder, acquired title in 1951 to real estate situated in the Town of Islip, comprising approximately 850 lots as shown upon a map filed in the Suffolk County Clerk's office in the year 1872.   Many of the lots abut on existing highways, but many others are located some distance back from those highways, along '' paper streets '' — streets designated on the map, but not physically in existence.   On some of the latter lots, petitioner desired to erect six one-family residences, and he applied to the town's Building and Zoning Inspector, respondent herein, for the requisite building permits.   However, respondent refused to grant any permits unless petitioner, pursuant to the provisions of section 280-a of the Town Law, constructed roads giving access to the proposed structures, or, in the alternative, posted a performance bond to insure the installation of such roads after erection of the buildings.   Challenging the validity of section 280-a, petitioner brought this proceeding under article 78 of the Civil Practice Act to compel respondent to issue the permits.   From the determination at Special Term, holding the statute constitutional and dismissing the complaint, petitioner appeals directly to this court (Civ. Prac. Act, § 588, subd. 4).

'' No permit for the erection of any building shall be issued '', section 280-a of the Town Law recites, '' unless a street or highway giving access to such proposed structure has been duly placed on the official map or plan, or if there be no official map or plan, unless such street or highway is (a) an existing state, county or town highway, or (b) a street shown upon a plat approved by the planning board   *   ·*   *   or (c) [as is the case here] a street on a plat duly filed and recorded in the office of the county clerk or register prior to the appointment of such planning board and the grant to such board of the power to approve plats.''   (See *Matter of Roger Homes 2nd Corp.* v. *Tilford,* 276 App. Div. 864, motion for leave to appeal denied 300 N. Y. 763.)   Then follows the portion of the statute here under attack.   '' Before such permit shall be issued '', it provides, '' such street or highway shall have been suitably improved to the satisfaction of the town board or planning board, if empowered by the town board in accordance with standards and specifications approved by the town board, as

adequate in respect to the public health, safety and general welfare for the special circumstances of the particular street or highway." However, the section goes on to specify, " Where the enforcement of the provisions of this section would entail practical difficulty or unnecessary hardship, and where the circumstances of the case do not require the structure to be related to existing or proposed streets or highways," the landowner may appeal to the board of appeals or other board empowered to grant variances or exceptions in zoning regulations. " The board may in passing on such appeal make any reasonable exception and issue the permit subject to conditions that will protect any future street or highway layout." The decision of the board is declared reviewable in the courts by certiorari.

The requirement that a road giving access to the proposed structure be " suitably improved " before a building permit may be issued became a part of the Town Law in 1938 (L. 1938, ch. 264, § 5, amdg. Town Law, § 280), in which year, also, virtually identical provisions were added to the General City Law and the Village Law. (General City Law, § 36, as amd. by L. 1938, ch. 205, § 4; Village Law, § 179-*o*, as amd. by L. 1938, ch. 44, § 4.) Although these three provisions have thus been on the statute books for well over a decade, the present petitioner is the first to complain that any one of them unjustifiably interferes with the proper enjoyment of his property — and this circumstance may itself be of some significance. (Cf. *Headley* v. *City of Rochester,* 272 N. Y. 197, 203.)

The challenged regulation is an enactment in that important field of legislation concerned with the problem of community planning and designed to secure the " uniform and harmonious development of the growth " of our villages, towns and cities. (*Village of Lynbrook* v. *Cadoo,* 252 N. Y. 308, 314.) As a court of a sister state has observed, " it is essential to adequate planning that there be provision for future community needs reasonably to be anticipated. We are surrounded with the problems of planless growth. The baneful consequences of haphazard development are everywhere apparent. * * * To challenge the power to give proper direction to community growth and development * * * is to deny the vitality of a principle that has brought men together in organized society for their

mutual advantage.'' (*Mansfield & Swett* v. *Town of West Orange,* 120 N. J. L. 145, 150–151.)

An understanding of the statute under review may be aided, and perspective gained, by a consideration of a related provision enacted at the same time. (Town Law, § 277, as amd. by L. 1938, ch. 264, § 4; General City Law, § 33, as amd. by L. 1938, ch. 205, § 3; Village Law, § 179-*l*, as amd. by L. 1938, ch. 44, § 3.) By that provision, the local planning board is empowered to require, as a condition to the approval of a subdivision plat, '' that all streets or other public places shown on such plats shall be suitably graded and paved '' and other improvements installed, or, alternatively, that a performance bond sufficient to cover the cost of these improvements shall be furnished by the owner. The statute reflects a legislative judgment that the building up of unimproved and undeveloped areas ought to be accompanied by provision for roads and streets and other essential facilities to meet the basic needs of the new residents of the area. '' We all know that where subdivision of land is unregulated lots are sold without paving, water, drainage, or sanitary facilities, and then later the community feels forced to protect the residents and take over the streets and * * * provide for the facilities.'' (Bettman, City and Regional Planning Papers [1946], p. 74.) Thus, the regulations benefit both the consumer, who is protected '' in purchasing a building site with assurance of its usability for a suitable home,'' and the community at large, which naturally gains greatly from the use of '' sound practices in land use and development.'' (See Lautner, Subdivision Regulations [1941], p. 238.) Similar statutes, enacted in other states (see, e.g., Cal. Business and Professional Code, §§ 11551, 11511; Mass. Ann. Laws, ch. 41, § 81M [Supp. 1950]; Mich. Stat. Ann. § 5.3004 [Rev. of 1949], § 26.445[3] [Supp. 1951]), have, when questioned in the courts, been upheld as a valid exercise of the police power. (See *Allen* v. *Stockwell,* 210 Mich. 488; *Ayres* v. *City Council of Los Angeles,* 34 Cal. 2d 31, 42; cf. *Newton* v. *American Sec. Co.,* 201 Ark. 943; *Ridgefield Land Co.* v. *City of Detroit,* 241 Mich. 468.)

Section 280-a of the Town Law provides for a restriction of the same character. Where adequate roads have not been constructed at the time of subdivision — here, because the plat was

filed and recorded long before the development of modern planning legislation — the builder, before he may obtain a building permit, must lay such streets and highways as are necessary to render his dwellings accessible to the outside world. There can be no doubt, in light of the importance of such means of access, that the regulation is reasonable and valid. '' In a time of emergency, such as sickness; accident, fire or other catastrophe,'' the court below pointed out, '' a road over which automobiles and fire apparatus can travel safely must always be available, otherwise great suffering, property damage and even loss of life may result.'' Nor is it only in time of peril that such roads are essential; in this era of the automobile, modern living as we know it is impossible without improved highways linking people with their jobs, their sources of food and other necessities, their children's schools and their amusements and entertainments. Unimproved or defective roads can cause a complete breakdown of services in a community. The state has a legitimate and real interest in requiring that the means of access to the new construction be properly improved and sufficient for the purpose.

It is petitioner's view, however, that, granting the necessity for such roads, it is a violation of section 7 of article I of the New York State Constitution to compel him or any other landowner to construct them on his land at his expense, without compensation from the town. He points out that, while the statute does not in terms provide that such roads are to become public streets, it is the invariable practice for the owner to dedicate them to the town — among other reasons, because, as public streets, the expenses of maintenance and repair will be shared by other landowners who benefit from them. Of course, no one may question that the town, were it desirous of constructing a road across petitioner's property, would have to condemn the necessary land and compensate petitioner. But the town here has no such desire or design and does not seek to condemn land owned by petitioner. It is petitioner who wishes to construct dwellings on his property, and the town merely conditions its approval of such construction upon his compliance with reasonable conditions designed for the protection both of the ultimate purchasers of the homes and of the public. That the

state may empower the town to do this, is clear. " * * * the subjection to the police power of all property gives the State the right to forbid the use of property in the way desired, save under ‧reasonable conditions promoting the public welfare. * * * In short, it may regulate any business or the use of any property in the interest of the public health, safety or welfare, provided this be done reasonably. To that extent the public interest is supreme and the private interest must yield." (*Town of Windsor* v. *Whitney*, 95 Conn. 357, 366–367; see, also, *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288, 298–299.) The courts have accordingly sustained the validity of regulations requiring projected buildings to be set back a certain distance from the street (see *Town of Islip* v. *Summers Coal & Lbr. Co.*, 257 N. Y. 167; *Matter of Wulfsohn* v. *Burden, supra*, 241 N. Y. 288; *Headley* v. *City of Rochester, supra*, 272 N. Y. 197, 204–205), stipulating that back and side yards of specified area be set aside (see *Matter of Wulfsohn* v. *Burden, supra*, 241 N. Y. 288; *Matter of Fimiani* v. *Swift*, 258 N. Y. 613) and prescribing the minimum area upon which a residence may be built. (See *Rodgers* v. *Village of Tarrytown*, 302 N. Y. 115; *Dilliard* v. *Village of North Hills*, 276 App. Div. 969.) Not essentially different from these is a regulation requiring the owner to afford access, by suitably improved roads, to the dwellings he proposes to erect.

Situations may, of course, arise where compliance with the requirement would occasion unnecessary hardship. Such may be the case, for example, where the owner of a small plot of land desires merely to construct a dwelling for his own personal use, and the improvement of a road will be an expense far out of proportion to the cost of the building. However, as indicated, section 280-a itself provides the means for relaxing the requirement. In cases of " practical difficulty " or " unnecessary hardship " and " where the circumstances of the case do not require the structure to be related to existing or proposed streets or highways," the board of appeals is empowered to make a " reasonable exception " in favor of the owner. The validity of the statutory scheme is therefore clear; " a statute does not violate the Constitution ", we held in *People* v. *Calvar*

*Corp.* (286 N. Y. 419, 421), " where it does not deprive an owner unreasonably of his property if the statute is properly administered in accordance with its terms. (*Dowsey* v. *Village of Kensington,* 257 N. Y. 221.)"

The order appealed from should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Order affirmed.