Mario Pittoni, J.
This is an article 78 proceeding for an order directing the Building Inspector of the village ‘ ‘ to reissue ’ ’ a building permit.
On May 19, 1959 the petitioner presented an application to the Building Department of the village for a building permit to erect a one-family dwelling on premises situate approximately 1,000 feet west of Wolver Hollow Road in Upper Brook-ville. The plot plan annexed to the petitioner’s application shows a strip of land 15 feet wide and winding from Wolver Hollow Road a distance of approximately 1,000 feet to the subject premises. This strip was then, and still is, unimproved as a street, roadway or highway. Two days later, on May 21, 1959 the plans and application submitted for the building permit were approved by the Building Inspector of the village.
Thereafter, the petitioner cleared and graded approximately one acre of land, did some excavation work, incurred some other expenses for bricks, cement blocks and other preliminaries, all of which, according to his estimate, cost him nearly $2,000. Sometime later, the petitioner was advised by letter from the Building Inspector that the building permit had been revoked by the respondents, the Mayor and Board of Trustees of the village.
The petitioner now claims that the action of the village was illegal, arbitrary and capricious, and without any basis whatever in law or in fact. The village, however, points out that no building permit may be granted so long as the petitioner fails to conform with subdivision 2 of section 179-o of the Village Law, which states as follows: “ No permit for the erection of any building shall be issued unless a street or highway giving access to such proposed structure has been duly placed on the official map or plan, or if there be no official map or plan, unless such street or highway is (a) an existing state, county, town or village highway, or (b) a street shown upon a plat approved by the planning board * * # or (c) a street on a plat duly filed and recorded in the office of the county clerk or register prior to *907 the appointment of such planning board and the grant to such board of the power to approve plats. Before such permit shall be issued such street or highway ¡shall have been suitably improved to the satisfaction of the planning board in accordance with standards and specifications approved by the appropriate village officers as adequate in respect to the public health, safety and general welfare for the special circumstances of the particular street or highway”.
The constitutionality and other legality of a statute in exactly the same language as section 179-o of the Village Law has been upheld in the Matter of Brous v. Smith (304 N. Y. 164, 168-170) in language by Judge Fuld as follows:
“ The challenged regulation is an enactment in that important field of legislation concerned with the problem of community planning and designed to secure the ‘ uniform and harmonious development of the growth ’ of our villages, towns and cities.
“ Section 280-a of the Town Law provides for a restriction of the same character. Where adequate roads have not been constructed at the time of subdivision — here, because the plat was filed and recorded long before the development of modem planning legislation — the builder, before he may obtain a building permit, must lay such streets and highways as are necessary to render his dwellings accessible to the outside world. There can be no doubt, in light of the importance of such means of access, that the regulation is reasonable and valid. ‘ In a time of emergency, such as sickness, accident, fire or other catastrophe,’ the court below pointed out, ‘ a road over which automobiles and fire apparatus can travel safely must always be available, otherwise great suffering, property damage and even loss of life may result. ’ Nor is it only in time of peril that such roads are essential; in this era of the automobile, modern living as we know it is impossible without improved highways linking people with their jobs, their sources of food and other necessities, their children’s schools and their amusements and entertainments. Unimproved or defective roads can cause a complete breakdown of services in a community. The state has a legitimate and real interest in requiring that the means of access to the new construction be properly improved and sufficient for the purpose.”
The evidence shows that the petitioner has failed to improve the 15-foot strip as a street or roadway, or to have this strip placed on the official map as required by the Village Law. Furthermore, although the strip may give access to the subject premises, it does not give access to the “ proposed structure ” *908 as required Tby the statute. That, too, shows noncompliance (Matter of Annandale v. Brienza, 1 A D 2d 785 [2d Dept.]).
Therefore, the petitioner has failed to show compliance with section 179-0 of the Village Law.
The petitioner, however, argues that he has acquired a vested right to the building permit because the Building Inspector granted the original permit, because the Building Inspector misinterpreted the reasons given by the board in withdrawing the permit, by reason of the board’s purported reasons for withdrawing the permit, and by reason of the expenditures incurred by the petitioner in reliance upon the original issuance of the permit by the Building Inspector. Be that as it may, it is fundamental that no actions on the part of public officials, including the issuance of a permit, in violation of law give any vested right (City of Buffalo v. Roadway Tr. Co., 303 N. Y. 453, 463; Marcus v. Village of Mamaroneck, 283 N. Y. 325, 330).
It follows that the petitioner has shown no right to the issuance of a building permit and the petition is therefore dismissed.
This is the decision of the court pursuant to section 440 of the Civil Practice Act. Submit order.