208 N.J. Super. 359 (1986)
506 A.2d 22
GEORGE ELLIS, NORMAN SHABEL AND ARLENE SHABEL, T/A LARCHMONT PLAZA, PLAINTIFFS-RESPONDENTS,
v.
LARCHMONT PHARMACY PLAZA, INC. AND ERIC SCHEID, DEFENDANTS-APPELLANTS, AND TOWNSHIP OF MOUNT LAUREL MUNICIPAL UTILITIES AUTHORITY, A MUNICIPAL BODY OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 26, 1985.
Decided February 26, 1986.
*361 Before Judges MICHELS, GAULKIN and DEIGHAN.
Toll, Sullivan and Luthman, attorneys for appellants (David A. Luthman, on the brief).
Norman Shabel, attorney for respondents (Patricia Ozga, on the brief).
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiffs brought this action to restrain defendants Larchmont Pharmacy Plaza, Inc. and Eric Scheid (defendants) from tying into water and sewer lines running along the front of their property and allegedly owned by them. The complaint also demanded damages "should the defendants tie into or connect into the water and sewer lines."
*362 At the trial judge's direction, the Mount Laurel Municipal Utilities Authority (MUA) was joined as a defendant. Plaintiffs asserted their ownership of the lines as against the MUA and alleged "tortious interference" by MUA in issuing extension permits to defendants. MUA, in turn, counterclaimed for judgment "declaring that the water and sewer lines are [its] sole property."
On cross-motions for summary judgment, the trial judge held that "there was no voluntary or involuntary dedication of the off-site pipes" to MUA and that plaintiffs "may, for a reasonable period of time into the future, seek on a reasonable pro rata basis the reimbursement for out of pocket expenses in installing the sewer and water lines from [plaintiffs'] westwardly most property line." When the parties were unable to agree as to defendants' pro rata share, the judge took testimony and entered judgment in favor of plaintiffs for $12,799.92. Defendants appeal.[1]
The parties own three contiguous properties on Route 38 in Mount Laurel. The Shabel plaintiffs own one tract; plaintiff Ellis owns the parcel to the immediate east; defendants own the lot east of Ellis. The Shabels planned to develop their lot into a small shopping center and in 1982 obtained approval of MUA to extend water and sewer service to their property. The Shabels entered into an agreement with a neighboring owner under which they were permitted to "connect to the existing twelve inch water main" on the neighbor's property; the Shabels agreed to "construct and maintain" a twelve inch water main and an eight inch sewer line and to "bear all costs and expense" of those installations "without the payment of a tie-in or similar fee."
Shortly thereafter, the Shabels and Ellis entered into an agreement under which the Shabels transferred "a one-half (1/2) *363 interest" in the extended sewer and water lines. Ellis agreed to pay one-half of "all costs expended by the parties in the construction and maintenance of said sewer and water lines" and was granted the right to extend the lines from the Shabel property to his property at his sole cost.
The mains were thus extended to the Shabel and Ellis parcels by early 1983. Later that year, defendants sought and obtained permission from MUA to extend the mains to their lot. Upon learning of the issuance of that permit, plaintiffs wrote to advise defendants that they had "paid for the construction of said sewer and water lines" and "will institute litigation upon the commencement of any construction of sewer and water lines tying into the ... previously constructed sewer and water lines." This litigation ensued.
Central to the resolution of the dispute is the question of ownership of the water and sewer main extensions constructed by and at the expense of plaintiffs. By ordinance and regulations, the municipality clearly could have required plaintiffs to pay, as a condition of site plan approval, their fair share of the cost of providing water and sewerage facilities for their properties. N.J.S.A. 40:55D-42; Divan Builders v. Planning Bd. Tp. of Wayne, 66 N.J. 582 (1975); Deerfield Estates, Inc. v. Tp. of East Brunswick, 60 N.J. 115 (1972); Longridge Builders, Inc. v. Planning Bd. of Princeton Tp., 52 N.J. 348 (1968); Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423 (1958). The municipality apparently had not adopted any such ordinance or regulations, but MUA, supported by defendants, pointed out in the trial court that it had adopted regulations pursuant to N.J.S.A. 40:14B-21 and 22 for water and sewer connection fees. Its Regulation 33b, entitled "Main Extensions," provides that "[a]ny facilities installed under the provisions of this section shall be the sole property of the Authority." And Regulations 35a and 36 require any applicant for a main extension to pay the cost thereof and to convey by deed all necessary easements. MUA accordingly urged that the main extensions were its property.
*364 The trial judge recognized that MUA "appears to have required [the] immediate and full dedication to the township" of the extensions built at plaintiffs' expense. He also acknowledged that MUA had exclusive authority to control "joinder of another member of the public to a water system" and that "the pipes are the MUA's for access purposes" and "for such other technical reasons required for day to day operation of the system." But he held that MUA cannot "by passing a rule ... simply take these facilities by fiat."
We regard that to be too constricted a view of the powers of a municipal utilities authority under N.J.S.A. 40:14B-21 and 22. Those sections broadly permit a municipal utilities authority to assess and collect charges for connection with the water or sewerage system. It has long been settled as a general proposition that the expense of installing most required improvements may properly be imposed upon the developer, including, in appropriate cases, the installation of water and sewer lines. Deerfield Estates, Inc., supra, 60 N.J. at 124; Levin v. Livingston Tp., 35 N.J. 500, 514-15 (1961); Hilton Acres v. Klein, 35 N.J. 570, 580 (1961). Any imposition of the cost of such improvements on a developer must be accompanied by provisions for partial reimbursement if the improvement specially benefits property other than that of the developer. Divan Builders, supra, 66 N.J. at 602; cf. N.J.S.A. 40:55D-42. Accordingly, subject to the requirement that the developer should be burdened only with his pro-rata share of the cost of the extensions, we perceive no reason why MUA may not impose, by duly promulgated regulations, the cost of line extensions upon the applicants for whose benefit they are designed. Cf. Luv Condominium Ass'n v. Stanhope, 192 N.J. Super. 159 (1983); Trump Plaza v. Atlantic City Mun. Utilities Auth., 192 N.J. Super. 376 (Law Div. 1983).
Nor is there any reason why MUA may not direct that extensions so constructed are its property. The trial judge acknowledged that MUA had the right, and presumably the *365 obligation, to have access to the lines and to operate and maintain them. Plaintiffs' "ownership" as defined by the trial judge thus appears to comprehend only a right to extract contribution from those who later tie into the lines. Such an allocation of the construction costs, however, is not appropriately left to a private developer. Cf. Drake v. Town of Boonton, 106 N.J. Super. 79 (Law Div. 1969).
Given the MUA regulations and the rights and duties which MUA has with respect to lines incorporated in its water and sewage systems, we conclude that MUA owns the off-site line extensions built by plaintiffs pursuant to MUA approval. Plaintiffs' claim should properly be made to MUA to apportion the cost of those line extensions among the properties benefited and to reimburse plaintiffs for their costs in excess of their fair share. Cf. Divan Builders, supra; see also White Birch Realty Corp. v. Gloucester Tp. Mun. Util., 80 N.J. 165 (1979); S.S. & O. Corp. v. Tp. of Bernards Sewerage Auth., 62 N.J. 369 (1973); Airwick Industries, Inc. v. Carlstadt Sewerage Auth., 57 N.J. 107 (1970).
The January 2, 1985 judgment is accordingly reversed. The matter is remanded to the Chancery Division for further proceedings consistent with this opinion.
NOTES
[1] No appeal has been taken from the dismissal of the claims against or by MUA, which is therefore not a party to the appeal.